484

Cherry, Appellant, *v*. Wolf.

Argued April 12, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Theodore L. Moritz,* for appellant.

*Samuel J. Goldstein,* for appellees.

OPINION BY WATKINS, J., June 17, 1965:

This is an appeal from the judgment of the County Court of Allegheny County entered after a trial in an assumpsit action for a real estate broker's commission before the court below, sitting without a jury, in favor of Jack Wolf and Lillian Wolf, his wife (hereinafter referred to as sellers), and Jessie M. Vann (hereinafter referred to as buyer), the defendants-appellees, and against Louise Cherry (hereinafter referred to as broker), the plaintiff-appellant; and from the denial by the court en banc below of a motion for a new trial.

Louise Cherry was a registered real estate broker. After reading an advertisement setting forth that a certain property in Pittsburgh owned by the sellers was for sale at a price of $28,000, the broker got in touch with the sellers at their home and was given permission to obtain a buyer. The broker then contacted the buyer, a long standing friend, and interested her in the purchase of the property. A contract of sale was drawn dated May 1, 1961 which was executed at a later date by the sellers and the buyer and it provided for the sale of the property for a consideration of $28,-000, title to be delivered on or about July 1, 1961.

The agreement contained a stipulation that the appellant was the only recognized broker in that transaction and was to be paid a commission of six (6%) per cent. at the consummation of the sale. At the signing a check of the buyer, in the amount of $500 was delivered to the broker as down money, which was to be held in escrow until the consummation of the sale. The check was never presented for payment until April 24, 1963 when Mellon National Bank refused to honor the item as being stale. The agreement also provided that: "In the event that the party of the second part (the buyer) is unable to secure additional funds for

a mortgage the agreement will become null and void." It is also clear from the record that the buyer and the broker understood that the buyer would not purchase until she sold her own property so that the purchase money would be available for the new purchase.

Mrs. Wolf, one of the sellers testified that the broker came to her prior to the closing date of July 31, 1961 and asked her to release the buyer from the agreement because she could not sell her home and so "wanted out". The seller agreed to release the buyer and thereafter in July again put the property on the market. Several agencies were contacted and the house was regularly advertised for sale in the newspapers. After two "open houses" to encourage a sale, a Mrs. Jessie R. Klee, who was an employee of W. I. Berman Company, a real estate agency that had been contacted by the sellers, having heard of the prior interest of the buyer, called on her and after some negotiations reduced the selling price to $26,500 and a sales agreement was concluded with the buyer on March 28, 1962. The Berman agency was paid the real estate commission.

Mrs. Wolf testified that she had no dealings of any kind with the broker between July and the time of the 1962 agreement. She further testified that she had no understanding with either the broker or the buyer that the purchase of the property depended upon the sale of the buyer's property, and when she released the buyer from the sales agreement at the request of the broker it was without reservation.

The buyer testified that she told Mrs. Wolf and Miss Cherry that she wouldn't buy the property until she sold her Oakmont property. She considered the transaction terminated in July. The record also discloses that prior to the final agreement of sale the buyer had disposed of lots for $10,000 but did not sell her property until after the purchase of the seller's property.

The broker brought this action in assumpsit for the recovery of the real estate commission and it was tried before Judge GUFFEY, without a jury. The plaintiff's contention is that the sale of the property was the result of some kind of conspiracy between the buyer and the sellers to deny her the commission. The court below characterized the broker's testimony, "while clear in many respects, was contradictory, vague and accusatory in the essential elements." As this dispute is largely a question of the credibility of the witnesses we are bound by the determination of the trial judge: "The credibility of witnesses and the weight to be accorded to their testimony is for the trial judge, sitting without a jury, as the finder of the facts: . . . A decision by a trial judge sitting without a jury has the force and effect of a jury's verdict . . .". *Seligson v. Young,* 189 Pa. Superior Ct. 510, 514, 151 A. 2d 792 (1959).

The oral agreement concerning the sale as testified to by the buyer and admitted by the broker, although not included in the writing, was believed by the court below and became an integral part of the transaction. *Lowenstein v. McPeak,* 48 Pa. Superior Ct. 280 (1911). The mere fact that negotiations are begun by a broker with a purchaser, who ultimately buys from the owner, or through another agent, does not entitle the broker to remuneration unless his prior acts are the efficient procuring cause of the sale. *Helmig v. Rockwell Mfg. Co.,* 380 Pa. 305, 111 A. 2d 118 (1955).

The law is carefully reviewed by Mr. Justice JONES in *Axilbund v. McAllister,* 407 Pa. 46, 180 A. 2d 244 (1962), in which the Supreme Court reversed the court below in entering judgment non obstante veredicto and ordered a new trial. In that case, being a trial before the court and jury the Supreme Court, reading the testimony in the light most favorable to the verdict winner, held that it was error for the court below to decide

it as a matter of law. The Court said that the fact that the broker carried on negotiations with a prospective buyer or seller does not entitle the broker to a commission unless his efforts constituted the efficient procuring cause of the sale. Ordinarily this question whether the broker was the efficient cause of the sale is a question of fact for the jury to determine. The Supreme Court in the *Axilbund* case, supra, said at page 62: "The more sound, albeit the more strict, rule is that, if the owner of property enters into a contract (whether oral or written) of employment with a broker and such contract expressly provides that payment of a commission to the broker is contingent upon the broker obtaining a certain stated price for the property, the broker's right to a commission arises only if and when he produces a buyer ready and willing to pay the price stated in the contract. That rule prevails even though the owner effects a sale at a lesser price to a buyer produced by the broker, provided, always, that the owner is not at fault and acts in good faith and without fraud. Adherence to the terms of the contract is the rationale of the rule; if by his contract of employment the broker undertakes a special task and if he fails to perform that task, why should he be entitled to the fruits of that contract?" See also: 46 A.L.R. 2d 851; §§447, 448 of Restatement (2d), Agency.

In the *Axilbund* case, supra, the defense was that the broker did not procure the sale and that if there was a contract between the broker and the seller it was not performed. Where the prospective buyer or seller and the broker fail to reach agreement or if there is a break in their negotiations, and at a later date the property is sold to the same prospective buyer the original broker is not entitled to a commission. The Supreme Court held that the question as to whether there was a break in the negotiations was a question

for the jury and so awarded a new trial. In the instant case the jury, being the court, found that although there was an agreement, it was cancelled by the release of the buyer at the request of the broker so a break in negotiations occurred; and that the broker was not the efficient procuring cause of the ultimate sale and so was not entitled to the commission. There is no evidence in this record to indicate any conspiracy that would be evidence of bad faith between the buyer and sellers as contended by the broker. As the court below said: "While plaintiff intimates collusion or fraud between Mrs. Wolf and Mrs. Vann, there appeared to be no private negotiations after the abandonment of the original agreement, . . .".

There is ample evidence to support the findings of fact and the refusal by the court below of a new trial was clearly not an abuse of discretion.

Judgment affirmed.