Bobali Corporation *v.* Tamapa Company, Appellant.

2

Argued December 5, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, and SPAETH, JJ. (VAN DER VOORT, J., absent).

*James D. Crawford,* with him *Kimber E. Vought, Sanford M. Rosenbloom,* and *Schnader, Harrison, Segal & Lewis,* for appellant.

*William D. Boswell,* with him *Arthur Berman,* and *Berman and Boswell,* for appellee.

OPINION BY CERCONE, J., June 24, 1975:

This is an appeal by defendant, Tamapa Corporation, from a judgment entered in the Court of Common Pleas of Dauphin County. The case originated when the parties instituted an amicable action in assumpsit in order to resolve a controversy between them concerning the construction to be given a real estate instrument containing both an option to purchase at a specified price, and a first refusal option to purchase at an unspecified price, if, at some future time, it was offered by a third party. The court below entered judgment in favor of the plaintiff, Bobali Corporation, and against the defendant Tamapa Corporation. For the reasons that follow we affirm the lower court's judgment.

The material facts were stipulated by the parties and are therefore not at issue. On January 20, 1971, Bobali (formerly known as Gibson Boulevard, Inc.) and Tamapa entered into an Agreement of Sale whereby Tamapa agreed to purchase a certain tract of land from Bobali for $278,000. As part of the consideration for Tamapa entering into the Agreement of Sale, Bobali agreed to grant Tamapa an option to purchase an additional tract of land which was contiguous to the first tract. The exact terms and provisions of this option were contained in a separate Option Agreement of Sale (hereinafter Option Agreement) which was made a part of the Agreement of Sale. On April 13, 1971, settlement under the Agreement of Sale was consummated, and the previously referred to Option Agreement was executed. The Option Agreement provided Tamapa with an option to purchase the contiguous tract (hereinafter designated as the "premises") upon compliance with certain terms.[1] By letter

---

1. "1. SELLER agrees to hold open the offer contained herein to sell and convey the premises to BUYER for a period of

dated March 21, 1973, and in compliance with the Option Agreement, Bobali notified Tamapa that Certon Corporation had offered to purchase the premises for $393,487.50 (hereinafter the "third party offer"). In a letter dated April 12, 1973, Tamapa advised Bobali that, in accordance with the Option Agreement, it was exercising its fixed option to purchase the premises at the stated price[2] or if for any reason the fixed option had terminated or was not available to Tamapa, Tamapa was, in the alternative, exercising its right of first refusal, at the price of

two (2) years and six (6) months from April 13, 1971, unless earlier terminated as hereinafter provided. If BUYER shall fail to accept said offer to buy the premises within the time limited and in the manner prescribed herein, neither party shall thereafter have any rights or obligations under this Agreement.

\* \* \*

"14. BUYER shall at all times during the option term of this Agreement have the following right of preemption:

"(a) SELLER shall not sell nor otherwise dispose of the premises or any part thereof without first notifying BUYER in writing of the proposed sale, and setting forth the name of the purchaser, the terms and conditions of the proposed sale, and giving BUYER thirty (30) days' option from the date of receipt of such notice by BUYER within which to notify SELLER of BUYER's desire to purchase the property being offered for sale at the same price and on the same terms and conditions as those on which SELLER proposed to make said sale to said other party.

"(b) if BUYER fails to exercise this right of first refusal and the sale to the third party does not take place or if the sale is to other than a bona fide purchaser, this right of first refusal shall remain in full force; otherwise it shall lapse and this Option Agreement shall terminate."

2. The Option Agreement provided that if the fixed option was properly exercised then the purchase price would be as follows:

"2. (a) The purchase price for the premises which SELLER agrees to accept and BUYER agrees to pay is SIXTEEN THOUSAND FIVE HUNDRED THIRTY FIVE DOLLARS ($16,535.00) per acre (or a total of $260,252.63 if BUYER exercises its option for the entire premises) which shall be paid by BUYER to SELLER as follows:"

the third party offer. By letter dated April 27, 1973, Bobali informed Tamapa that it was accepting Tamapa's exercise of its right of first refusal, but was rejecting Tamapa's exercise of the fixed option, contending that the right to exercise the fixed option terminated upon receipt of notice of the third party offer. Although Bobali agrees Tamapa is entitled to purchase the premises, there is a dispute between Bobali and Tamapa as to whether the fixed option price or the right of first refusal price is the operative purchase price.

In hopes of expeditiously resolving this dispute the parties agreed to institute an amicable action in assumpsit; and that Tamapa would deposit in escrow the difference between the fixed option price and the first refusal price (which is determined by the terms of the third party offer).

The question before us is one of interpretation. Tamapa contends that the Option Agreement provides that the fixed option price may be terminated only upon a bona fide *sale* of the optioned premises and, therefore, the mere bona fide third party *offer* [by Certon] to purchase the optioned premises did not preclude Tamapa from exercising its fixed option to purchase at the stated price. Bobali, on the other hand, contends that, under the language of the Option Agreement, upon the communication to Tamapa of a bona fide third party offer to purchase the optioned premises the fixed option price of Tamapa was superseded leaving Tamapa with only its right of first refusal. In short, the issue is whether the fixed option price or the price as determined by the third party offer controls the terms of the sale to Tamapa.

In construing the terms of a contract we are guided by well-defined and fundamental canons of construction. Our Supreme Court has adopted the following principles:

". . . 'The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done con-

sistently with legal principles.' (Citations omitted.) 'Contracts must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, if that intention can be ascertained from their language. (Citing cases.)'" *Percy A. Brown & Co. v. Raub,* 357 Pa. 271, 287 (1947).

Also see *Unit Vending Corp. v. Lacas,* 410 Pa. 614 (1963). Moreover, in ascertaining intent, effect must be given to all the provisions of the written contract. *Robert F. Felte, Inc. v. White,* 451 Pa. 137 (1973). "In a written contract the intent of the parties is the writing itself and when the words are clear and unambiguous the intent is to be determined only from the express language of the agreement." *R. F. Felte, Inc. v. White,* supra at 143. *East Crossroads Center, Inc. v. Mellon-Stuart Co.,* 416 Pa. 229 (1965). A corollary rule is that "[t]he parties [have] the right to make their own contract, and it is not the function of this Court to rewrite it, or to give it a construction in conflict with the accepted and plain meaning of the language used." *Hagarty v. Wm. Akers, Jr., Co., Inc.,* 342 Pa. 236, 239 (1941) ; *R. F. Felte, Inc. v. White,* supra.

We are in accord with the court below that the language in the Option Agreement, containing both the fixed price option and the right of first refusal (right of preemption), is plain and unambiguous, albeit imprecisely written.

The Option Agreement provided in paragraph 1 (see Footnote 1) that from April 13, 1971, Tamapa had two and one-half years in which it could at any time exercise its option to purchase the premises for a pre-determined fixed price. This option to purchase at a fixed price for a fixed period of time was, however, modified by the phrase "unless earlier terminated as hereinafter provided." (Paragraph 1 of Option Agreement.) The only reference in the Option Agreement to the words, "unless earlier terminated as hereinafter provided," is found in

paragraph 14 (see Footnote 1) which is characterized as the buyer's right of preemption, that is, right of first refusal. Essentially, the right of first refusal provides that Bobali could not sell or otherwise dispose of the premises without first giving notice to Tamapa of the terms of the proposed sale to a third party. Upon receipt of such notice Tamapa would then have 30 days to decide whether it was willing to "purchase the property being offered for sale at the *same price and on the same terms and conditions* as those on which the seller (Bobali) proposed to make the sale to the other party." (Paragraph 14(a), emphasis supplied.)

In attempting to ascertain the intent of the parties, the court below logically reasoned as follows:

"On the question of intent, what value would there be to the Seller (Bobali) in having this Option Agreement of Sale and particularly the right of first refusal or right of preemption contained in the Agreement in paragraph 14, as paragraph 14 is written, unless it was the definite intent of the parties that the right of preemption would supersede and terminate the fixed price option? Obviously, if the fixed price option was to be an absolute right during the period of time, there would have been no reason to put in paragraph 1 of the Option Agreement of Sale the language 'unless earlier terminated as hereinafter provided.' (footnote omitted.)"[3]

We agree with this analysis and find it determinative on the paramount issue of the intent of the parties. Appellant takes exception to this analysis on the grounds that the fixed price option could only be terminated upon the bona fide sale of the premises to a third party, as opposed to the mere offer of the third party. We find this contention to be untenable for it unduly strains the construction of paragraph 14 which speaks not in terms of a completed sale, but rather of a "proposed" sale. Para-

graph 14(b) specifically provides, by elimination, the instances when the right of first refusal becomes superior to the fixed price option and terminates the Option Agreement prior to the expiration of the two and one-half year period, by stating the two instances when the Option Agreement will not terminate even though a third party offer has been tendered. The first instance would be where the buyer (Tamapa) fails to exercise its right of first refusal but for some reason the sale to the third party is not consummated. The other instance would be where Tamapa again fails to exercise its right of first refusal, but it is subsequently determined that the third party was not a bona fide purchaser. Paragraph 14(b) then states that, *"otherwise* [the right of first refusal] shall lapse and this Option Agreement shall. terminate." (Emphasis supplied.) The word "otherwise" can only mean that in all other circumstances the Option Agreement terminates and with it, of course, the fixed price option.

We also deem it conclusive, with respect to the intent of the parties, as did the court below, that the right of first refusal provision (Paragraph 14) would be of no purpose or value unless it was the intent of the parties that the right of first refusal would supersede and terminate the fixed price option. Appellant argues, however, that the right of first refusal is simply a means whereby Bobali could dispose of the premises at a price lower than the fixed option price. In other words, appellant contends that if the value of the premises depreciated below the fixed price option then the right of first refusal clause provided a means by which Bobali could sell the premises at the reduced price during the option period. Under this interpretation the right of first refusal is viewed merely as a supplement to the fixed option as opposed to an alternative to it. In support of this proposition appellant cites the case of *Texaco, Inc. v. Reichert*, 91 Dauph. 391

(1969), and cases cited therein.[3] Those cases are, however, clearly distinguishable from the instant case. In *Texaco, Inc. v. Reichert,* supra, there was additional language in the contract which specifically provided for continuing rights in the optionee. The other cases cited by appellant must also be rejected for the same reason; that is, they too involved the interpretation of an instrument which provided that the fixed price option was not limited or modified by the right of first refusal option. Furthermore, the cases relied upon by appellant involve situations where the optionee has either occupied or improved the property which is the subject of the option and, therefore, it would be unfair to require the optionee to meet a third party's offer which would naturally reflect the improvements on the premises made by the optionee himself. In the instant case, the premises were not occupied, used or improved by the appellant, but rather merely land contiguous to the property used by the appellant.

We also note that there are numerous cases which support Bobali's position that the fixed option price was modified or limited by the right of first refusal. See, e.g., *Shell Oil Co., Inc. v. Blumberg,* 154 F.2d 251 (5th Cir. 1946) ; *Northwest Racing Ass'n v. Hunt,* 20 Ill. App. 2d 393, 156 N.E.2d 285 (1959) ; *Texaco, Inc. v. Rogow,* 150 Conn. 401, 190 A.2d 48 (1963).[4]

In any event, it is obvious that dual option agreements (i.e., agreements containing both a fixed price option and a right of first refusal option) although often generally similar, are phrased differently and, therefore, a decision construing one agreement will not be controlling in a case involving another. See *Shell Oil Company v. Prescott,*

---

3. See, e.g., *Butler v. Richardson,* 74 R.I. 344, 60 A.2d 718 (1948) ; *Sinclair Refining Co. v. Clay,* 102 F. Supp. 732 (N.D. Ohio 1951), aff'd. 194 F.2d 532 (6th Cir. 1952). See generally 8 A.L.R.2d 604 (1949), and cases discussed therein.

4. Our attention has not been directed to any Pennsylvania appellate court decision that has discussed the issue before us.

398 F.2d 592 (6th Cir. 1968); *Texaco, Inc. v. Rogow,* supra. Giving the language used in this Option Agreement its plain and natural meaning, we conclude that the fixed price option contained in paragraph 1 was modified or limited by the right of first refusal provision found in paragraph 14. Therefore, the fixed price option granted to appellant could only be effectively exercised during a two and one-half year period commencing from April 13, 1971; and then, practically speaking, only prior to receiving notice that Bobali was willing to accept a bona fide third party offer. Once Bobali notified appellant, prior to appellant exercising the fixed price option, of its desire to accept Certon's bona fide offer, the fixed price option was superseded and appellant was left only with its right of preemption, that is, the right of first refusal with the opportunity to either accept or refuse to purchase the premises under the terms contained in Certon's offer. Had appellant declined to purchase under the terms of Certon's offer, then both the fixed price option and the right of first refusal would have been effectively extinguished.

In conclusion then, while the Option Agreement is not skillfully drafted, and appellant's interpretation of it seems remotely plausible, we find appellee's construction to be more in harmony with the plain meaning of the language used.

Judgment affirmed.