(640 P 2d 317)

No. 52,835

M & M OIL COMPANY, INC., *Appellant,* v. EVERETT E. FINCH, JULIETTE M. FINCH, *et al., Appellees.*

Opinion filed January 21, 1982.

*M. Dean Burkhead* and *Eugene C. Riling,* of Riling, Norwood, Burkhead & Fairchild, Chartered, of Lawrence, for the appellant.

*John L. Peterson* and *Donald A. Hardy,* of Williamson, Cubbison & Hardy, and *John J. Ziegelmeyer,* all of Kansas City, for the appellees Finch.

*Patrick J. Reardon,* of Leavenworth, for the appellees Wiggins.

Before FOTH, C.J., presiding, TERRY L. BULLOCK, District Judge, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

FOTH, C.J.: This is a "dual option" case in which a tenant sought specific performance of a fixed price option to purchase contained in a lease. The trial court held the fixed price option to have been lost before its exercise by plaintiff's failure to exercise its right of first refusal, or preemptive right, under the same lease. The plaintiff tenant appeals. We affirm.

The plaintiff, M & M Oil Company, Inc., is the tenant of property at 47th Street and Rainbow Boulevard in Westwood which it operates as an automobile service station. The defendants Juliette M. Finch and Susan R. and Dwight Wiggins own the real estate and are the landlords under the lease. Defendants also own an adjoining parcel which they rent to other tenants for use as a garage. This second parcel also figures prominently in the case and is known as the European Motors property.

The lease was originally made by defendants' predecessors to Phillips Petroleum Company commencing December 1, 1953. It

ran for fifteen years with three five-year renewals, or until December 1, 1983. The rent throughout the thirty years was $125.00 per month. Phillips assigned its tenancy interest to M & M effective December 1, 1973, and plaintiff has been in possession through valid renewals ever since.

The lease terms underlying this controversy appear in paragraphs 11 and 13, which provide:

"11. Lessee shall have an option to purchase said leased premises and property free and clear of all liens and encumbrances, at any time during the term of this lease, or any extension or renewal thereof, for the sum of $25,000.00, provided that Lessee shall notify Lessor in writing of its intention to so purchase said premises at least thirty (30) days prior to the expiration of this lease, or any extension or renewal thereof. In the event Lessee shall elect to purchase said premises and property, Lessor shall furnish to Lessee for examination a complete abstract of title, certified to date, compiled by a reputable abstractor, or title insurance policy at the option of Lessee, showing merchantable title to said premises in Lessor, and a reasonable time shall be allowed for examination of title by Lessee and correction of defects, if any, in said title by Lessor."

"13. If the Lessor or the Lessor's successors or assigns at any time during the term of this lease or any renewal or extension thereof received a bona fide offer to purchase all or any part of said premises, buildings, fixtures, equipment, machinery and appliances included in this lease, and desires to sell said premises, buildings, fixtures, equipment, machinery and appliances under the terms of said offer, Lessor agrees to give Lessee thirty (30) days' notice in writing of such bona fide offer setting forth the name and address of the proposed purchaser who has made the offer, the amount of the proposed purchase price and the terms of payment thereof. The Lessee shall have first option to purchase the demised premises within the above-mentioned thirty-day period at the same price and on the same terms of any such proposal. In the event that Lessee does not exercise its option to purchase the demised premises within the aforesaid period, and said premises for any reason are not sold pursuant to the bona fide offer set forth in the notice, then Lessee shall have, upon the same conditions of notice, the continuing first option to purchase the said premises upon the terms of any subsequent bona fide offer or offers to purchase. Provided, nothing herein contained shall be construed as making this lease subject to cancellation in whole or in part in the event of sale."

It will be observed there is no provision in either paragraph giving one precedence over the other. The closest to such a provision is the language of paragraph 13 to the effect that if the tenant fails to exercise its preemptive right and the proposed sale to the third party for any reason falls through, the preemptive right continues. There is nothing to say the fixed option continues.

The case was submitted on stipulated facts and exhibits. On

May 21, 1979, defendants received an offer from the City of Westwood to buy both the M & M property and the adjacent European Motors property. The offer was a "package deal" of $90,000.00, broken down by the city into $60,000.00 for the M & M property and $30,000.00 for the European Motors property. There is no evidence that the offer was solicited by defendants, that it was not bona fide, or that the allocation of the purchase price between the two parcels was dictated by anything other than the city's business judgment.

On May 22, 1979, counsel for Mrs. Finch transmitted to M & M the terms of the city's offer, including the fact that it was contingent upon the simultaneous purchase of the European Motors property. The transmittal letter to M & M referred to the preemptive right provisions of paragraph 13 of the lease and gave M & M the first right to purchase the leased premises for $60,000.00 by acceptance within thirty days.

M & M responded through counsel on June 7, 1979. The thrust of the response was M & M's intention to rely at some time in the future on its claimed continuing right to exercise the fixed price option under paragraph 11.

From June through July there was a series of letters between counsel. These reveal (1) Mrs. Finch unequivocally accepted the city's offer, and (2) while M & M's position was equivocal, it clearly had not exercised either its right of first refusal or its fixed price option.

Thereafter negotiations between defendants and the city proceeded. In November the city passed two ordinances, one authorizing the purchase of the M & M property for $60,000.00, the other the European Motors property for $40,000.00 How the latter price increase came about does not appear but in any event, on the advice of the city's counsel, neither ordinance was published or took effect.

The next step was the institution of condemnation proceedings by the city against both parcels on January 16, 1980.

On January 28, 1980, M & M wrote a letter to defendants purporting to exercise its fixed price option. Defendants' response, through counsel, was to advise M & M that they had sold the property to the city by contract dated February 12, 1980, for $60,000.00, and that defendants considered M & M's rights had

been lost by its failure to exercise its preemptive right within 30 days of the notice of the previous May.

M & M thereafter instituted this action to enforce the fixed price option. The trial court agreed with defendants' view of the consequences of M & M's failure to act and denied relief. M & M appeals.

As a secondary but preliminary matter M & M argues that the offer from the city did not trigger the first refusal clause at all because (a) it was conditional on the sale of the European Motors tract and (b) defendants were not prepared to sell on the city's terms, as was evidenced by the ultimate sale whereby the European Motors tract brought $40,000.00 instead of the $30,000.00 first offered.

It is true the offer from the city was a combined offer. However, the notice to M & M, while disclosing the full details of the city's offer, was an unconditional offer to sell to M & M for $60,000.00; there was no suggestion in the notice that in order to exercise its preemptive right M & M would have to buy the European Motors property. In M & M's response to the May, 1979, notice of the city's offer, M & M didn't complain of any contingency but simply asserted its belief in the continuance of the fixed price option. In any event, Mrs. Finch was clearly prepared to accept the city's combined offer, as was demonstrated by a letter from her attorney to the city attorney. The fact that the European Motors property involved eventually fetched a little more does not detract from the bona fides of the offer for this property which was transmitted to M & M pursuant to the lease. M & M could have bought the property for $60,000.00; it declined to do so, and the property was eventually sold to the city for $60,000.00. In our view the trial court correctly disregarded the fate of the other property.

The primary question raised by M & M is whether its failure to match the city's offer extinguished its fixed price option. On this issue M & M makes two arguments: that the first refusal clause was only to be operative if the third party offer was for less than the fixed price option; and that in any event the fixed price option continued in effect.

On the first argument M & M relies heavily on *Butler v. Richardson,* 74 R. I. 344, 60 A.2d 718 (1948). That case involved a one year lease of a residence with an option to buy at any time during the year on ten days' notice for $15,000.00. If the option

were exercised, the purchaser was to get credit for all rent paid and to assume taxes and insurance as of the beginning of the lease. It also contained a right of first refusal. The court construed the agreement as one designed to give the tenants a year in which to decide whether to purchase the house. The sellers received an offer from a third party, but whether lesser or greater than the option price does not appear. The sellers merely notified the buyers that they had an offer and that buyers had ten days to exercise their option. The buyers responded by exercising the option without even inquiring what the terms of the third-party offer were. Under these circumstances the court held that the fixed price option was properly enforced. The right of first refusal was regarded as a mere supplement, designed to accelerate the buyers' decision in the event the sellers received a *lesser* offer which they were willing to accept. However, since the notice to the buyers did not convey the terms of the third party offer, the court held the first refusal clause was never properly invoked in the first place, so the unequivocal exercise of the fixed price option was effective.

Under the facts of *Butler* the construction given the first refusal clause was mere dictum. Beyond that, we have found no case which fully followed the *Butler* court's reasoning on this issue, although several have considered it. In *Sinclair Refining Co. v. Allbritton,* 147 Tex. 468, 218 S.W.2d 185 (1949), the court agreed that a first refusal clause "is not to be given precedence over or even equal dignity" with a fixed option, but specifically declined to follow *Butler's* reasoning that the first refusal clause applied only to third party offers *below* the option price. There the option had been exercised *before* the third party offer was secured, and the court held that the parties' rights were thereupon fixed and controlled by the fixed option.

*Northwest Racing Association v. Hunt,* 20 Ill. App. 2d 393, 156 N.E.2d 285 (1959), departs even further. After noting the constructions adopted in *Butler* and *Allbritton,* the court impliedly rejected both by holding that once a valid right of first refusal was tendered and rejected, the fixed option lapsed. In so holding the court relied on *Shell Oil Co. v. Blumberg,* 154 F.2d 251 (5th Cir. 1946), where the same result was reached under similar lease provisions.

Cases dealing with dual options recognize that the terms of the

particular clauses control. The parties may specifically provide which clause takes precedence and for either the continuance or extinguishment of a fixed price option where a right of first refusal is declined. *E.g., Shell Oil Company v. Prescott,* 398 F.2d 592, 593 (6th Cir. 1968); *Green v. Sprague Ranches,* 170 Cal. App. 2d 687, 339 P.2d 607 (1959). The difficulty arises where, as here, each clause is complete in itself and neither makes reference to the other. In such a case the general rule, which we adopt, is that set out in *Tarrant v. Self,* _____ Ind. App. _____, _____, 387 N.E.2d 1349, 1353 (1979):

> "Where both a fixed-price purchase option and an option giving the lessee the right of first refusal are contained in a lease the parties must specifically designate which one takes precedence over the other. Where, as here, the lease does not prescribe which provision takes precedence over the other, if, before the lessee exercises his option to purchase at a fixed amount or before such option comes into existence, whichever is later, the lessor properly notifies the lessee of a bona fide offer to purchase the leased premises, and the lessee refuses to exercise his option to purchase the property under the terms of such offer, then the lessee forfeits his right to purchase under the fixed-price option. See *Shell Oil Co., Inc. v. Blumberg,* (5th Cir. 1946) 154 F.2d 251; *Adams v. Helburn,* (1923) 198 Ky. 546, 249 S.W. 543; *Northwest Racing Ass'n v. Hunt,* (1959) 20 Ill. App. 2d 393, 156 N.E.2d 285; *Shell Oil Co. v. Jolley,* (1972) 130 Vt. 482, 296 A.2d 236; and *Annotation,* 8 A.L.R.2d 604."

*Tarrant,* we note, dealt with a Phillips Petroleum Company lease of a vintage close to the one at bar. See also *Bobali Corp. v. Tamapa Co.,* 235 Pa. Super. 1, 340 A.2d 485 (1975); *Texaco, Inc. v. Rogow,* 150 Conn. 401, 190 A.2d 48 (1963).

M & M makes one other argument for giving the fixed option precedence over the first refusal clause, and that is the fact that in paragraph 11, which is otherwise printed, the option price of $25,000.00 was typed in, whereas the first refusal clause in paragraph 13 is wholly printed. It relies on the familiar rule that where there is a conflict between printed provisions and those which are typed or handwritten into a printed form the latter will generally control as more likely reflecting the parties' negotiated and specific intent. The trouble with applying that rule here is that there is no conflict in or question about the fixed option *price,* but only the mechanics of the two options. The provisions which need to be construed are all printed, and the rule giving preference to language manually inserted in a printed form has no applicability.

In summary, we agree with the trial court that when defendants

gave plaintiff notice of the city's bona fide offer and an opportunity to buy at the city's price plaintiff lost any right to exercise its fixed price option. It was required to exercise its right of first refusal if it wished to purchase the property, and its failure to do so left defendants free to accept the city's offer.

Affirmed.