478 A.2d 795

**AMOCO OIL COMPANY, a Maryland Corporation, Appellee,**

v.

**Ralph E. SNYDER and Ruth L. Snyder, Appellants,**

**and**

**Frank R. Crash.**

Supreme Court of Pennsylvania.

Argued March 7, 1984.

Decided June 28, 1984.

George Hardy Rowley, Greenville, for appellants.

Richard H. Martin, Baskin & Sears, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is a case of first impression in this jurisdiction involving the interpretation of a lease for commercial property which contains two purchase option provisions, one in which the lessee may initiate a purchase of the property at any time during the lease for a fixed price, and the other in which the lessee, after notice of an offer made by a third party, may purchase the property at the same price and on the same terms and conditions as the third party. The question is whether the lessee who has not exercised his fixed price option prior to notice of a third party offer, may purchase the property for the fixed price, after he has been notified of a third party offer for an amount greater than the fixed price, or whether he must purchase—if he is to purchase at all—by matching the offer of the third party.

Appellants (hereafter the "Snyders") own a lot measuring 90′ × 100′ in Greenville, Pennsylvania, on which is located a service station, which they, with others then having an interest in the property, leased to American Oil Company in 1968. This lease superseded a previous lease between the same parties executed in 1948. After execution of the 1968 lease, American Oil Company was purchased by Amoco Oil Company (hereafter "Amoco"), which is the successor in

interest of American Oil Company, the drafter of the lease in question. The term of the lease was ten years, with the lessee having two optional five year renewal periods.

The purchase option provisions of the lease at issue are as follows:

3. (a) Lessee shall have, and is hereby given, the option of purchasing said demised premises for the sum of FORTY-FIVE THOUSAND DOLLARS ($45,000), provided Lessee shall give Lessor notice in writing of its election to exercise said option to purchase at any time during the original term or any extension or renewal thereof. If any part of the demised premises or any interest therein shall be taken by right of eminent domain or by any conveyance in lieu thereof or in connection therewith, the purchase price set forth herein, if the purchase option is exercised, shall be reduced in the same proportion that the area immediately prior to such taking is reduced by the taking.

(b) It is further agreed that should Lessor, or Lessor's heirs, executors, grantees, successors or assigns, at any time during the term of this lease or any extension thereof, receive an offer to purchase the demised premises, or any part thereof, or any premises which includes the demised premises, and desires to accept said offer, or should Lessor during any such time make an offer to sell the demised premises, or any part thereof, or any premises which includes the demised premises, Lessor shall give Lessee ninety (90) days notice in writing of such offer, setting forth the name and address of the proposed purchaser, the amount of the proposed purchase price, and all other terms and conditions of such offer, and Lessee shall have the first option to purchase the premises which are the subject of the offer by giving written notice to Lessor of its intention to purchase within said ninety (90) day period at the same price and on the same terms of any such offer, it being understood that in the event Lessee does not give notice of its intention to exercise said option to purchase within said period, this

lease and all of its terms and conditions shall nevertheless remain in full force and effect and Lessor and any purchaser or purchasers of the demised premises, or any part thereof, or any premises which includes the demised premises, shall be bound thereby, and in the event that the premises set forth in the offer are not sold for any reason, Lessee shall have, upon the same conditions and notice, the continuing first option to purchase the demised premises, or any part thereof, or any premises which includes the demised premises, upon the terms of any subsequent offer or offers to purchase.

(c) In the event any of said options is exercised, Lessor will convey a merchantable title in fee simple to said real estate by good and sufficient warranty deed, with release of dower, homestead, curtesy and other rights of the respective spouses, if any, and free from all encumbrances whatsoever.

In November of 1978, while Amoco continued to pay rent under the lease, but after it had closed its service station, Snyders entered into an agreement with a third party to sell the property, subject to the terms and conditions of the lease, including lessee's right to purchase the property, as stated in the third-party sales agreement, "under the same terms and conditions set forth in this agreement." Snyders gave notice to Amoco, as required by paragraph 3(b) of the lease, of the third party offer to purchase the property for $75,000, a price $30,000 more than Amoco's fixed price option of $45,000. Amoco did not give notice of its intention to purchase the property at the same price and under the same terms and conditions as those agreed to by the third party, but instead, in January of 1979, prior to the expiration of the original term of the lease, gave notice of its intention to purchase the property under the fixed price option provision of the lease, for $45,000. When Snyders refused to convey the property to Amoco under the terms of the fixed price option, Amoco filed an equity action against Snyders seeking specific performance of the fixed price option.

The Court of Common Pleas of Mercer County granted specific performance of the fixed price option. Snyders' petition for rehearing was denied, and on appeal to Superior Court, 302 Pa.Super. 472, 448 A.2d 1139, the trial court was affirmed. We granted allocatur.

Amoco's position is that neither the agreement as a whole nor the specific language of the lease qualifies or modifies Amoco's rights under the fixed price option. Further, Amoco, citing *Bobali Corporation v. Tamapa Company*, 235 Pa.Super. 1, 340 A.2d 485 (1975), observes that since it made substantial improvements to the leasehold, if it were not permitted to exercise the fixed price option, it would be forced to repurchase its own improvements, the value of which are reflected in the higher price offered by the third party.

Snyder, on the other hand, argues that if the fixed price option were not terminated by notice of a third party offer which they are willing to accept, the fixed price option would place a ceiling on the amount for which the lessor could sell his reversionary interest in the property, for no buyer would pay more than he could recover from the lessee under the fixed price option. Secondly, when paragraph 3(b) states that if lessee does not exercise its right of first refusal, the lease and all of the terms and conditions remain in effect against any purchaser, this must be understood to mean all of the terms and conditions except the fixed price option, for otherwise the provision would be mere surplusage, since lessor had the right to sell subject to the terms of the lease anyway. Thirdly, a reasonable interpretation of the lease would protect lessor's right to sell their reversionary interest for its fair market value during the twenty years which the lease might run. Finally, Snyders argue that any ambiguity or uncertainty in the lease should be resolved against the lessee, who drafted the lease, and that in any event, an option must be strictly construed against the optionee and in favor of the optionor, here the Snyders.

Study of the problems raised by this case confirms the wisdom of Superior Court's observation in *Bobali Corporation v. Tamapa Company*, supra, to the effect that a decision construing one instrument containing both a fixed price option and a right of first refusal option will not necessarily control a case involving a different instrument. 235 Pa.Super. at 9, 340 A.2d at 490. In *Bobali* the instrument provided that the lessee could exercise its fixed price option for a certain period of time "unless earlier terminated as hereinafter provided." Thereinafter appeared a right of first refusal option, which the court interpreted as terminating the fixed price option. There is no provision in the lease at bar which terminates the fixed price option, and so the rationale of *Bobali* is not applicable to this case. Similarly unhelpful is the case law of other jurisdictions, which, like *Bobali*, often concerns instruments different from the lease in this case, and which in any case is split on the question of whether notice of an offer under the right of first refusal clause in a lease terminates a fixed price option. *See* Annot. 8 A.L.R.2d 604, 22 A.L.R.4th 1293.

▪ This Court, however, has held that a lease is in the nature of a contract and is controlled by principles of contract law, *Ezy Parks v. Larson*, 499 Pa. 615, 626, 454 A.2d 928, 934 (1982), and has articulated standards for the interpretation and construction of contracts which are applicable to this case:

[W]here language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as *manifestly expressed*, rather than as, perhaps, silently intended.

\* \* \* \* \* \*

"[T]his Court long ago emphasized that '[t]he parties [have] the right to make their own contract, and it is not the function of this Court to re-write it, or to give it a construction in conflict with ... the accepted and plain meaning of the language used.' *Hagarty v. William Akers, Jr. Co.*, 342 Pa. 236, 20 A.2d 317 (1941)." *Felte v. White [Global Franchise]*, 451 Pa. [137] at 144, 302 A.2d

[347] at 351. " 'It is not the province of the court to alter a contract by construction or to make a new contract for the parties; its duty is confined to the interpretation of the one which they have made for themselves, without regard to its wisdom or folly.' [13 C.J. § 485, p. 524]" *Moore v. Stevens Coal Co.,* 315 Pa. 564, 568, 173 A. 661, 662 (1934).

*Steuart v. McChesney,* 498 Pa. 45, 49–51, 444 A.2d 659, 661–62 (1982).

■ Amoco asserts, and we agree, that the provisions of paragraph 3(a) are plainly written and must be enforced in accord with that plain meaning. Paragraph 3(a) provides expressly that the fixed price option may be exercised *"at any time"* during the lease, and nowhere is there a provision in the lease that expressly terminates the fixed price option upon the occurrence of an event or lapse of time.

Moreover, paragraph 3(b) does not in any manner contradict 3(a). Rather, it is a provision drawn for Amoco's benefit which would allow Amoco the preemptive right to purchase the property at a lower price than its fixed price option, should the lessor produce a third-party offer to buy at a lower price. Thus, the lease, for all practical purposes, sets a ceiling on the value of the property, protecting Amoco's right to initiate a purchase (pursuant to the fixed price option). It also protects Amoco's right to match an offer made at a lower figure (pursuant to the first refusal option). In sum, paragraphs 3(a) and 3(b) are neither unclear, contradictory, inconsistent nor ambiguous, but are designed to protect Amoco's interests in different situations.

Furthermore, paragraph 3(b) provides that if Amoco does not purchase the property within the allowed 90 day period, the lease and all of its terms and conditions remain in full force and effect against the Lessor and any purchaser. The plain meaning of this provision is that if a third party were to purchase the property, Amoco would retain the right to

exercise its fixed price option against the new owner,[*] and in any event, the lease and all its terms and conditions—including the fixed price option—remain in full force and effect against the Lessor. Nowhere is there additional language which restricts the applicability of the fixed price option. In the absence of such restriction, the fixed price option, by its terms, remains generally applicable.

It may be that it was unwise for Snyders to have entered into this agreement, but it is not our function to rewrite agreements for the parties and to strike a better bargain than they themselves were able to accomplish. Courts are not super-negotiators. Where the language of the instrument is clear, as it is in this case, we are constrained to give effect to what the parties have agreed to.

Affirmed.

ZAPPALA, J., filed a dissenting opinion which McDERMOTT, J., joined.

ZAPPALA, Justice, dissenting.

I dissent from the majority's decision affirming the court below.

Contrary to the majority, I would find that the presence of both the fixed price purchase option and the right of first refusal creates an ambiguity in the lease. Where, as here, there is a third party offer, either provision is arguably applicable. The terms on which the lessee must purchase

---

[*] Snyders argue that language in a lease which preserves the terms and conditions *of the lease* will not preserve an option to purchase agreement, for such is not an essential covenant of the lease. *See Pettit v. Tourison,* 283 Pa. 529, 129 A. 587 (1925). Even so, the agreement expressly preserves the option to purchase in paragraph 10:

> Lessor covenants that no conveyance, assignment by, or other change of interest of Lessor in the premises hereby demised whether recorded or unrecorded, shall be binding upon Lessee unless Lessee shall be actually notified thereof by U.S. Certified Mail and in no event shall such conveyance, assignment or other change of interest affect this lease *or the renewal or purchase option rights of Lessee hereunder.*

This is adequate to preserve Amoco's purchase option rights, even in the event of a sale of the property.

differ according to which is applied. In the absence of language stating which takes precedence in such a situation, the lease must be considered ambiguous. The ambiguity cannot be resolved by considering each clause in isolation, as the majority does.

The ambiguities are resolved by principles of contract construction. Under such principles, the Appellee, Amoco Oil, should be required to meet the price offered by the prospective third party purchaser if it wishes to purchase the subject premises. A contract should be interpreted by ascertaining the intention of the parties, and in so doing, effect must be given to all provisions of the contract, *Felte v. White Global Franchise*, 451 Pa. 137, 302 A.2d 347 (1973). Where a contract is susceptible to two possible interpretations, one of which makes it fair, customary, and such as reasonable persons would be likely to enter into and the other of which makes it inequitable, unusual, or not such as reasonable persons would be likely to enter into, the interpretation that makes the contract fair and reasonable must be favored, *Heidt v. Aughenbaugh Coal Co.*, 406 Pa. 188, 176 A.2d 400 (1962). A written instrument must be strictly construed against the party drafting it, *Heidt, supra, Galligan v. Arovitch*, 421 Pa. 301, 219 A.2d 463 (1966).

In the instant case, the interpretation of the contract depends on the reconciliation of the fixed price purchase option and the right of first refusal. The two clauses can be interpreted so as to give effect to both. This can be done by construing the fixed price purchase option as applicable only until there is a purchase offer by a third party. At that point, the fixed price option would be extinguished and could not be invoked against either the original lessor or a party purchasing from the original lessor. Otherwise, the right of first refusal would be meaningless. The lessee would never have to meet a higher price offered by a third party if the fixed price option could be invoked after the making of such offer. A third party would not make a higher offer if the fixed price option

could be invoked so as to force a sale at a loss. I do not find such a result to be fair, reasonable, and likely to be bargained for by reasonable parties. Further, where an ambiguity exists, we must then look to the intent of the parties. I believe that the intent of the parties in including the fixed price option and right of first refusal was to protect Amoco's leasehold interest, not the acquisition of a fee. Such interest is adequately protected by allowing Amoco to purchase at the price offered by the third party. I would find that the parties intended both provisions of the contract to be operative and did not intend to prevent Appellants from selling the property to a third party for more than the amount of the fixed price option. In so doing, we would reach a fair and reasonable result that gives effect to both of the clauses in question. The propriety of such a result is further indicated by the fact that Amoco's predecessor, American Oil, drafted the lease. If we follow the established rule and construe the lease strictly against Amoco, we cannot permit Amoco to purchase the property without meeting the price offered by the third party.

In addition, there is a policy against restrictions on the alienability of real estate. We considered this policy in a different context in *Mahoney v. Furches*, 503 Pa. 60, 468 A.2d 458 (1983). In that case, a mortgagor entered into agreements to sell certain tracts of land she had mortgaged and attempted to prepay the mortgage. The mortgagee would not accept the prepayment. The mortgage note did not say whether prepayment was permissible. We found that inability to prepay would restrict the alienability of the property by preventing the mortgagor from conveying clear title. We held that our policy did not favor restrictions on alienability and that therefore, a mortgage could be prepaid in the absence of any provision to the contrary. That policy is applicable in the instant case. As pointed out *supra,* the majority's interpretation of the lease would discourage a third party from purchasing the property. That would be a

restriction on alienability and is not to be favored. In accordance with our policy, I would find that the fixed price option cannot be invoked after a third party offer in the absence of specific provision therefor.

We have not previously decided a case involving the construction of a lease with both a fixed price purchase option and a right of first refusal. Such cases have arisen in other jurisdictions. *Amoco Oil Co. v. Kraft,* 89 Mich. App. 270, 280 N.W.2d 505 (1979) involved a lease similar to that in question here. The court held that where the lessee did not invoke the right of first refusal when a third party offered to purchase for an amount greater than that of the fixed price option, the lessee could not thereafter invoke the fixed price option. The court found that result to be required by principles of equity and fair dealing and observed that otherwise, no one would purchase the property for more than the amount of the fixed price option. A lease that contains both a fixed price purchase option and a right of first refusal may contain a provision stating which of the two takes precedence, but in the absence of such provision, the fixed price option terminates on the making of an offer to purchase by a third party, *M & M Oil Co. v. Finch,* 7 Kan.App.2d 208, 640 P.2d 317 (1982), *Tarrant v. Self,* 180 Ind.App. 215, 387 N.E.2d 1349 (1979). Similar decisions were made in *Shell Oil Co. v. Jolley,* 130 Vt. 482, 269 A.2d 236 (1972) and *Adams v. Helburn,* 198 Ky. 546, 249 S.W. 543 (1923). See also *Northwest Racing Association v. Hunt,* 20 Ill.App.2d 393, 156 N.E.2d 285 (1959), where the lease provided that both the fixed price option and the right of first refusal would terminate if the lessee did not exercise the right of first refusal on notice of a proposed sale to a third party.

I find the reasoning of the above-cited cases persuasive and would follow it here. Accordingly, I would reverse.

McDERMOTT, J., joins in this dissenting opinion.