NOT DESIGNATED FOR PUBLICATION

No. 126,638

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DENNIS VAN SWOL and MARILYN VAN SWOL,
*Appellees*,

v.

JULIAN L. GEIGER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Brown District Court; LAURA JOHNSON-MCNISH, magistrate judge. Submitted without oral argument. Opinion filed September 27, 2024. Affirmed.

*William C. O'Keefe*, of O'Keefe Law Office, of Seneca, for appellant.

*Patrick E. Henderson*, of Henderson Law Office, of Atchison, for appellees.

Before GREEN, P.J., GARDNER and PICKERING, JJ.

PICKERING, J.: This appeal concerns a right of first refusal agreement between Julian L. Geiger, the holder of the right of first refusal, and Dennis Van Swol and Marilyn Van Swol, the owners of the property. Due to Geiger's failure to either exercise his right of refusal or sign a release of his right, the Van Swols petitioned the district court for quiet title. The district court's interpretation of the parties' agreement resulted in the court quieting title in favor of the Van Swols. On appeal, Geiger argues that the district court erred in interpreting the agreement. After careful review, we are not persuaded by Geiger's arguments, and we affirm.

1

*Right of First Refusal Agreement*

The Van Swols bought the Northeast Quarter of Section 5, Township 4 South, Range 18 East of the 6th Principal Meridian in Brown County, Kansas, from Geiger. On March 31, 2015, the Van Swols and Geiger executed a real estate right of first refusal agreement (agreement), granting Geiger the right of first refusal if the Van Swols decided to sell the land. Paragraph 2 of the agreement outlined the general requirements the Van Swols had to follow:

> "In the event Sellers desires to sell the above-described real estate, either during his/her/their lifetime or through his/her/their legal representative after being deceased, Sellers agrees to first offer said real estate for sale to Buyer. In the event Buyer does not wish to purchase said real estate when offered by Sellers, said Sellers shall have the right to offer said real estate for sale to a third party purchaser, SUBJECT TO, the First Right of Refusal herein granted to Buyer. Buyer must notify Sellers within seven (7) days of receipt of offer to sell of his intention to accept said offer to sell."

Paragraph 3 of the agreement provided how to determine the sale price if the Van Swols sold the land to Geiger:

> "In the event the Sellers and the Buyer cannot reach an agreement as to the sale price when the Sellers are ready to sell the above-described real estate, then the Buyer and Sellers shall select a certified appraiser to appraise the real estate above-described and the appraisal of the certified appraiser shall be the purchase price of the property. The Buyer shall, within seven days after receipt of the appraisal from the certified appraiser, notify the Sellers as to whether or not he wishes to purchase the property at the appraised price."

Paragraph 4 described the required procedure for selling the land to a third party. Paragraph 4A provided:

> "In the event Sellers do not enter into an agreement to sell the real estate to Buyer, as set forth in Paragraph No. 2 above, and in the further event that Sellers enters into a firm executed written agreement with a third party purchaser for the sale of the above-described real estate, Sellers agree that, after said written agreement with a third party purchaser is executed, Sellers will submit a copy of said agreement to Buyer."

Paragraph 4B stated that Geiger would have seven days after receipt of a written agreement to exercise his right of refusal and purchase the land under the same terms and conditions as offered by the third party. Paragraph 4C outlined the protocol depending on whether Geiger exercised his right of refusal:

> "In the event Buyer exercises his right of refusal, Buyer shall submit written notice to Sellers of his intention to purchase the real estate on the same terms and conditions as set forth in the written agreement between Sellers and the third party purchaser. In the event Buyer does not exercise his right of first refusal within seven (7) days as herein stated, then in that event, Sellers shall have the right and privilege of selling and conveying the premises to the third party purchaser on the terms and conditions set forth in the written agreement between Sellers and the third party purchaser."

Geiger's right of refusal would remain active until the Van Swols completed a sale and conveyance to a third party.

*The Van Swols' Efforts to Sell the Land*

According to Dennis, as he and his wife prepared for retirement, they had "a number of discussions" "over a number of years" with Geiger about selling the land. He spoke to Geiger when Geiger would visit the land to collect equipment, relaying price

3

ranges to Geiger that he had heard from people in the area. During these discussions, Geiger was unresponsive. Dennis also spoke to Geiger's sons about selling the land and claimed Geiger was present during some discussions of price ranges. During this time, the Van Swols never received a response or any counteroffers from Geiger.

Throughout this process, Marilyn approached a bank about getting a valuation for the land. The Van Swols also had a land broker visit the property for a valuation for use as hunting land. Geiger was unaware of the Van Swols' efforts to seek appraisals.

In October 2021, the Van Swols received an unsolicited offer from GRK Farms to buy the land for $624,000. Dennis discussed the offer with Geiger. Geiger claimed this was the first time Dennis had discussed selling the land with him. A week later, Geiger called Dennis and said he would not be able to match the offer. The Van Swols did not sell the property to GRK Farms.

In December 2021, the Van Swols entered a contract to sell the land to Jefferson and Rebekah Black for $600,000. Dennis discussed this contract with Geiger; Geiger did not indicate he wanted to exercise his right of refusal.

Shortly after entering the contract with the Blacks, the Van Swols also entered a commitment for title insurance for the land. The insurance commitment required that Geiger sign a release of his right of first refusal before a land sale could close. After discussing the offer from the Blacks with Geiger, Dennis called Geiger several times asking him to sign the release. Geiger claimed he became suspicious of the offer due to the small amount of earnest money the Blacks had offered. Geiger decided not to sign the release because of his suspicion. The Van Swols' contract with the Blacks then expired due to Geiger's refusal.

4

Pursuant to the Van Swols' contract with the Blacks, the land was appraised at $660,000. Geiger stated that he was suspicious of this appraisal, believing it was done by a "profit-motivated" appraiser. He also believed some of the land comparisons in the appraisal were invalid. Because of his suspicions of the land purchase offers and the Van Swols' appraisal, Geiger stated that he wanted the Van Swols to close on a contract before he would sign the release. He was not aware at the time that the Van Swols' title insurance required him to sign the release before the Van Swols could close on a contract.

In April 2022, the Van Swols entered a contract with Bill and Susan Mayes to sell the land for $700,000. When approached about this offer, Geiger again did not indicate he wanted to exercise his right of refusal.

*Petition to Quiet Title*

After entering the Mayes contract, the Van Swols filed a petition to quiet title in May 2022. The Van Swols alleged they risked the loss of the Mayes contract due to Geiger's failure to exercise his right of first refusal or to sign a release of his right. In August 2022, the Van Swols alleged the Mayes contract fell through due to the Van Swols' failure to provide clear title.

Both parties moved for summary judgment. After a hearing, the district court denied the motions.

At a bench trial, Dennis and Geiger testified to their recollections of discussions and offers regarding the land and their understandings of the agreement. During his testimony, Dennis revealed that there was a new offer for the land from Craig and Leslie Boeckner for $700,000. The Van Swols had not yet provided Geiger a copy of the contract. After this revelation, Geiger's counsel requested an appraisal of the land

5

pursuant to paragraph 3 of the agreement. This was the first time Geiger had requested an appraisal.

The Van Swols and the Boeckners entered a contract on February 23, 2023, shortly before trial. The Boeckners offered $700,000 with $7,000 in earnest money. During his testimony, Geiger would not say whether he would match the offer. He believed 10% earnest money was the accepted practice in real estate and thought the Boeckners' offer of 1% earnest money was comparably small. He admitted that at that moment, he would not be willing to pay $624,000—equivalent to the GRK Farms offer— for the land.

During arguments, both parties believed the agreement language was unambiguous. The Van Swols argued they had followed the agreement by offering to sell the land to Geiger multiple times with no response before taking third-party offers. The Van Swols believed that by seeking an appraisal during trial with an offer on the table, Geiger was attempting to negotiate a lower price than the Boeckners' offer. The Van Swols contended that this was inconsistent with the contract and the purpose of a right of first refusal. The Van Swols wanted to give Geiger seven days to consider the Boeckner offer but argued Geiger could not exercise his right of refusal and request an appraisal at the same time.

Geiger interpreted the right of first refusal agreement differently than the Van Swols. According to Geiger, the appraisal process under paragraph 3 of the agreement was a required step before the Van Swols could sell. He argued the Van Swols should have approached Geiger and agreed to an appraisal.

The district court interpreted the agreement as setting forth different selling procedures in paragraphs 3 and 4. Essentially, while paragraph 3 prescribed a sale price by appraisal, paragraph 4 provided a sale price by third-party offer. The court concluded

6

the contract required one procedure or the other, but not both. The court explained that when no third party was involved, the Van Swols and Geiger could discuss offers and use the paragraph 3 procedure. However, if a third party was involved, paragraph 4 would apply. The court stated: "I think once paragraph 2 is fulfilled, the seller could then go to paragraph 4 . . . . Follow the procedures set forth therein, and I believe that the seller's done that." The court gave Geiger seven days to match the Boeckners' offer. If Geiger did not exercise his right of refusal in that time, the court ordered him to sign a release of his right to allow for closing.

The district court also found the Van Swols were "conditionally entitled to an order quieting title against" Geiger. In its ruling, the district court relied on *Trear v. Chamberlain*, 308 Kan. 932, 425 P.3d 297 (2018), and *M & M Oil Co. v. Finch*, 7 Kan. App. 2d 208, 640 P.2d 317 (1982).

Geiger filed a motion for new trial, articulating that the agreement required the Van Swols to offer a contract to Geiger and use the paragraph 3 appraisal process if they did not agree on a price. According to Geiger, the Van Swols could offer the land to a third party *only after* the appraisal process. Geiger claimed the Van Swols did not offer a price to Geiger before taking a third-party offer.

After a hearing on Geiger's motion, the district court denied the motion, reiterating its interpretation that the agreement gave the parties the option of determining a price under paragraph 3 or 4, but did not require both. The court considered Geiger's actions: "Mr. Geiger could have accepted an offer, made a counteroffer, engaged in negotiations or worked with the Seller on obtaining an appraisal. Mr. Geiger did not do so." Therefore, the court concluded: "Mr. Geiger lost his opportunity to seek an appraisal under paragraph 3 when a third-party offer was made, due to his own inaction." The court denied Geiger's motion for new trial and ordered that "the cloud created on the Van Swol property by Mr. Geiger's refusal to sign the release removed." The court also released

"the property from the Real Estate Right of First Refusal . . . as the [Sellers have] fulfilled all their obligations under it and Mr. Geiger has failed to timely exercise his legal rights therein."

Geiger now appeals.

ANALYSIS

*The District Court Did Not Err in Its Interpretation of the Right of First Refusal Agreement*

*Standard of Review*

"'The interpretation and legal effect of written instruments are matters of law, and an appellate court exercises unlimited review. Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect. [Citation omitted.]'" *City of Arkansas City v. Bruton*, 284 Kan. 815, 828-29, 166 P.3d 992 (2007).

*Discussion*

"'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.'" *Russell v. Treanor Investments*, 311 Kan. 675, 680, 466 P.3d 481 (2020). Our Supreme Court has explained:

"'[A]n interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the

8

entire instrument from its four corners. The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided. [Citation omitted.]'" *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013).

In *Trear*, our Supreme Court explained the difference in a right of first refusal situation between a holder of the right of first refusal and the seller:

> '"The seller gives up its chance to negotiate with the holder of the right of first refusal for a price higher than the one a third party is willing to offer. *The holder of the right of first refusal gives up its chance to negotiate with the seller for a price lower than one the seller is willing to accept from a third party. The key to activation of a holder's right of first refusal is mutual willingness to enter into a sale at a specific price satisfactory to both the third party and the seller*.' [Citations omitted.]" *Trear*, 308 Kan. at 937.

The holder of a right of first refusal cannot force the seller to sell at a lower price, nor can a seller force a holder of the right to buy at a higher price. The right of refusal activates once the seller forms the specific intent to sell. 308 Kan. at 937-38.

Geiger asserts the Van Swols never attempted to negotiate a price and trigger paragraph 3 of the agreement. He claims the Van Swols only approached him with third-party offers, thereby skipping paragraphs 2 and 3 and going straight to paragraph 4 of the agreement. Essentially, he interprets the agreement as having three steps. First, the Van Swols must offer a price to Geiger. Second, if Geiger does not agree to the price, the parties must agree to an appraisal. And third, if Geiger and the Van Swols do not agree after the appraisal, then the Van Swols can seek third-party offers.

The Van Swols respond that they followed paragraph 2 of the agreement by offering the land to Geiger before going to a third party. Geiger's failure to respond to those offers, the Van Swols argue, showed he did not want to buy the land. This in turn

allowed the Van Swols to accept third-party offers. The Van Swols also contend that Geiger's subsequent nonresponsive replies to four separate third-party offers allowed them to proceed with selling the land under paragraph 4.

The Van Swols also assert that Geiger never displayed any interest in purchasing the property. Because Geiger was unresponsive in their initial discussions of selling the land, the appraisal requirement in paragraph 3 was never triggered. According to the Van Swols, they met each requirement in paragraph 4 by entering contracts with third parties and submitting those contracts to Geiger. Therefore, because Geiger failed to exercise his right of refusal, the Van Swols submit they are free to sell the land.

For support, Geiger first points to *Gardner v. Spurlock*, 184 Kan. 765, 339 P.2d 65 (1959). But that case does not significantly contribute to the current analysis. There, Gardner sold land to Spurlock. The sale contract gave Gardner the right to repurchase the land up to a specified date. When Gardner attempted to repurchase the land, Spurlock refused. On appeal, our Supreme Court found the contract required Spurlock to reconvey the land to Gardner and ordered specific performance by Spurlock. 184 Kan. at 773. It is not clear what Geiger believes *Gardner* contributes to this case. While *Gardner* discusses a right to repurchase land, both the contract and legal issues in that case are distinguishable from this case.

Geiger also points to *Anderson v. Armour & Company*, 205 Kan. 801, 473 P.2d 84 (1970), for the notion that he had an enforceable right to be offered the land first, requiring the Van Swols to attempt to negotiate a purchase with him. *Anderson*, however, explains that the holder of a right of first refusal has the right to receive the first offer to purchase the land at issue. See 205 Kan. at 805. But whether Geiger had the right to be offered the land first is not in question in this case. Even if this case was persuasive authority, based on Dennis' testimony, the district court found that the Van Swols offered the land to Geiger multiple times before taking third-party offers.

10

*The district court relied in part on* Trear v. Chamberlain.

In its ruling, the district court relied in part on *Trear*. There, the parties entered a contract granting Trear the right of first refusal to buy land owned by Chamberlain adjoining Trear's property. In particular, the contract granted Trear the right "'to purchase said adjoining real estate at a price and upon terms mutually agreed upon by the parties. If the parties cannot agree, this right of first refusal shall lapse and thereafter be considered null and void.'" 308 Kan. at 933. Chamberlain offered the land in writing to Trear for $289,000. The offer said it would expire in eight days and if Trear did not reply, Chamberlain's requirement to offer the land to Trear under their contract would be satisfied. Trear did not respond to the offer. After Chamberlain listed the land for sale, her attorney advised Trear to contact the real estate agent if he wanted to buy the land. The listed property did not sell and later, after being taken off the market, Chamberlain sold a portion of the land to her daughter. Trear sued, claiming Chamberlain violated his right of first refusal.

On appeal, the Supreme Court found that Trear bargained for the opportunity to negotiate with Chamberlain before anyone else, but Trear "simply failed to pursue it." 308 Kan. at 939. Accordingly, the court found Trear's right of refusal lapsed under the contract due to his unresponsiveness to Chamberlain's offer. 308 Kan. at 940-41.

*Trear* establishes that the holder of the right of first refusal loses the exclusive opportunity to negotiate a sale if the holder fails to pursue the seller's offers. See 308 Kan. at 940-41. And, as noted in *Trear*, the law favors reasonable interpretations of contracts, and interpretations leading to absurd results should be avoided. 308 Kan. at 936.

In this case, the Van Swols discussed selling the land to Geiger multiple times before third parties became involved. This included multiple discussions of price ranges,

11

during which Geiger showed no indication he wanted to buy the land. Geiger did not make any counteroffers or discuss an appraisal. Geiger's unresponsiveness mirrors that of Trear. Similar to *Trear*, Geiger's failure to pursue the Van Swols' initial offers did not indicate a desire to buy the land. Consequently, paragraph 2 of the agreement allowed the Van Swols to accept third-party offers.

In *Waste Connections of Kansas, Inc.*, Waste Connections had contracted for a right of first refusal with Richie Corporation. Our Supreme Court explained how in such a contract, the "seller must form the '"specific intention to sell"' in order for the right of first refusal to ripen into an '"enforceable contract right."'" 296 Kan. at 969.

In *Bergman v. Commerce Trust Co.*, 35 Kan. App. 2d 301, 308, 129 P.3d 624 (2006), another panel of this court concluded that the Bergmans, holders of a right of first refusal, could not exercise their right of refusal when the seller, Commerce Trust Co., did not wish to sell its property, even though Commerce had received third-party offers. The panel noted that under the contract, intent to sell the property was a condition precedent for activation of the Bergmans' right of refusal. 35 Kan. App. 2d at 307. Therefore, *Bergman* instructs that when a party has not shown a desire to sell, it is unreasonable to interpret a contract provision conditioned on such desire as activated.

Geiger argues that *Trear* is distinguishable from this case. He claims that unlike *Trear*, he responded to each offer he received. Geiger asserts he made no counteroffers "because the Van Swols were setting the price by third-party." These distinctions appear to presume the Van Swols offered the land to third parties before offering the land to Geiger. As noted earlier, the district court believed Dennis' testimony that the Van Swols made multiple offers to Geiger before taking third-party offers.

Geiger's interpretation that paragraph 3 is a required step seemingly would require Geiger and the Van Swols to agree to an appraisal under paragraph 3 *regardless* of

12

whether Geiger wants to buy the land. Such interpretation is inconsistent with paragraph 2's statement that "[i]n the event Buyer does not wish to purchase said real estate when offered by Sellers, said Sellers shall have the right to offer said real estate for sale to a third party purchaser." The appraisal procedure in paragraph 3 includes a condition precedent that Geiger and the Van Swols "cannot reach an agreement as to the sale price." When read in conjunction with paragraph 2, this condition suggests that Geiger has shown interest in buying the land, but he and the Van Swols disagree on the sale price.

Yet, under Geiger's interpretation, he would be required to agree to an appraisal and pay half the cost for such appraisal even if he does not want to buy the land. This prospect creates tension with *Bergman*'s warning against requiring a party to offer land under a right of refusal when there is no desire to sell. We must, however, interpret a contractual provision as stated in its plain language and in a way that is consistent with the whole contract. See *Waste Connections of Kansas, Inc*., 296 Kan. at 963. Accordingly, Geiger's interpretation of paragraph 3 as a required step before the Van Swols can offer the land to third parties is unworkable.

*The district court also relied in part on* M & M Oil Co. v. Finch.

In its ruling, the district court also relied on *M & M Oil*. There, the defendants rented land to M & M Oil to operate an auto shop. The defendants also owned adjoining land rented to other parties as a garage. M & M Oil's lease allowed M & M Oil to buy the land during the lease term and provided two ways to determine the sale price. One way was a fixed price of $25,000; the other way was a third-party offer to the defendants. The lease provided M & M Oil the chance to buy the land under the same terms of any third-party offer within 30 days. The defendants received an offer to buy the M & M Oil land and the adjoining land. The defendants notified M & M Oil and afforded M & M Oil the chance to specifically match the offer for the M & M Oil land. M & M Oil responded that

13

it would rely on its continuing right to exercise the fixed price option at some point in the future. After the defendants accepted the third-party offer, M & M Oil attempted to exercise the fixed price option. The defendants believed M & M Oil lost its rights by failing to match the third-party offer within 30 days.

On appeal, another panel of this court observed that no lease provision gave precedence to either mechanism for determining a sale price. 7 Kan. App. 2d at 209. The panel specifically highlighted that "each clause [was] complete in itself and neither [made] reference to the other." 7 Kan. App. 2d at 213. The panel adopted the rule that where each clause was independent of the other, the third-party offer would control if given before the lessee exercised its option to buy for the fixed price. Consequently, the panel concluded that once the defendants notified M & M Oil of the third-party offer and M & M Oil failed to exercise its right of refusal, it lost the right to exercise the fixed price option and the defendants were free to accept the third-party offer. 7 Kan. App. 2d at 213-14.

*M & M Oil* establishes that where a contract includes multiple ways to determine a sale price, each sale price mechanism being independent of the other, current circumstances should dictate which price determination applies. See 7 Kan. App. 2d at 213-14. In this case, the agreement provides two ways to determine the sale price: an appraisal under paragraph 3 or a third-party offer under paragraph 4. Paragraph 3 applies if "the Sellers and the Buyer cannot reach an agreement as to the sale price when the Sellers are ready to sell the above-described real estate." Paragraph 4 applies if "Sellers do not enter into an agreement to sell the real estate to Buyer, as set forth in Paragraph No. 2 above, and in the further event that Sellers enters into a firm executed written agreement with a third party purchaser for the sale of the above-described real estate."

Paragraph 3 does not mention third-party offers, nor does paragraph 4 mention an appraisal. Although paragraph 4 applies only if the Van Swols and Geigers do not enter a contract, the plain language of paragraph 4 does not require that there be an appraisal pursuant to paragraph 3 before the third-party procedure becomes effective. Accordingly, following *M & M Oil*, paragraphs 3 and 4 should be read independent of each other. Where the *M & M Oil* panel concluded the fixed purchase option became inactive when a third party was involved, in this case, it follows that when a third party is involved, the third-party procedure under paragraph 4 controls.

As noted in *Trear*, the right of first refusal is designed to prevent the seller from negotiating a price higher than a third-party offer and to prevent the buyer from negotiating a price lower than a third-party offer. 308 Kan. at 937. Consequently, because a third party—not the holder of the right—will dictate the price, the holder "runs the risk that the third party will agree to a price that is above market value, or that is above what the holder is willing and able to pay." *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 384, 805 N.E.2d 957 (2004); see *Trear*, 308 Kan. at 937.

As these cases explain, the right of first refusal is designed to prevent the seller from negotiating a price higher than a third-party offer and to prevent the buyer from negotiating a price lower than a third-party offer. Allowing the appraisal procedure to occur simultaneously with the third-party procedure creates the possibility of either Geiger seeking an appraisal lower than the third-party offer or the Van Swols seeking an appraisal higher than the third-party offer. Such an outcome is inconsistent with the purpose of the right of first refusal. This case illustrates that regardless of a holder's suspicion of the amount of a third-party's offer, at this stage, the third-party offer dictates the price.

We find that the district court was correct in interpreting the agreement as prescribing the paragraph 4 procedure when a third party is involved, and the paragraph 3 procedure when no third party is involved.

Affirmed.