609 A.2d 171

**DARRT DEVELOPMENT COMPANY**

v.

**TRI–STATE ASPHALT CORPORATION, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 12, 1991.

Filed May 5, 1992.

Reargument Denied July 14, 1992.

Robert L. Ceisler, Washington, for appellant.

George Retos, Jr., Washington, for appellee.

Before ROWLEY, President Judge, and KELLY and CERCONE, JJ.

ROWLEY, President Judge.

Appellee Darrt Development Company ("Darrt") is the owner of property in Washington County, Pennsylvania. Pursuant to an agreement dated December 3, 1986, appellant Tri–State Asphalt Corporation ("Tri–State") leased the property from Darrt with the intention of establishing an asphalt plant on the property. During the following year disputes arose concerning several provisions of the lease agreement. Those disputes have led to the present appeal.

To understand the appeal before us, it is necessary to examine the procedural history of the case. On December 11, 1987, Darrt filed a complaint in ejectment in which it asserted that Tri–State had paid no rent and refused to surrender possession of the property. Darrt demanded possession of the property and damages in the amount of the unpaid rent, which was then $7,500.00, as well as interest and costs. Tri–State's answer was accompanied by new matter and a counterclaim in which Tri–State demanded reimbursement in the amount of $4,707.50 for a survey and legal description of the property that it had obtained after Darrt allegedly breached its oral promise to provide those items. In an amended counterclaim Tri–State added a demand for damages resulting from Darrt's alleged failure

to grant to Tri–State a right of way for the installation and maintenance of utility lines.

On April 6, 1990, following a non-jury trial, the Honorable John F. Bell entered an order 1) directing Tri–State to vacate the property no later than June 1, 1990, 2) directing Tri–State to pay all rents due from March 1, 1987, to the date of final removal, plus interest, 3) directing Darrt to pay to Tri–State the amount of $2,353.75, representing one-half of the survey fee paid by Tri–State, and 4) finding for Darrt and against Tri–State on the latter's counterclaim for costs and expenses concerning the alleged right of way. Tri–State filed exceptions to the order. In an order entered July 9, 1990, the trial court dismissed Tri–State's exceptions and affirmed its earlier order.

In this timely appeal of the order of July 9, 1990, Tri–State raises four issues, which will be addressed *seriatim*. Concluding, after careful review, that none of Tri–State's issues warrants relief, we affirm the order of the trial court.

■ In its first issue, Tri–State challenges the trial court's finding that Tri–State was in default of the lease agreement as a result of not paying rent to Darrt. At issue is the following provision of the lease agreement:

Said lease shall commence one (1) month after all necessary permits from the E.P.A. and local government agencies are received granting approval to operate an asphalt and/or concrete plant upon the demised premises. The initial lease term shall run for one (1) year beginning on the first day of the month following said approval to operate....

In consideration hereof, Lessee promises and agrees to pay Lessor as rent ... the sum of Nine Thousand Dollars ($9,000.00) per year, in twelve (12) equal monthly installments of Seven Hundred Fifty Dollars ($750.00) per month, payable on the 1st day of each month beginning on the 1st day of the month after all necessary permits are received....

Lease Agreement, Article 2. The difficulty in interpreting this provision arises from the fact that two types of asphalt plants are involved: 1) a temporary, "Barber/Greene" plant and 2) a permanent, "H & B" plant. Tri–State obtained the necessary permits to operate a temporary plant on February 4, 1987; therefore, Darrt argues, Tri–State's obligation to pay rent to Darrt began on March 1, 1987. Because the permits needed to operate a permanent plant were not received until October 26, 1987, however, Tri–State contends that its obligation to pay rent did not begin until November 1, 1987.

The lease agreement does not define the term "asphalt and/or concrete plant." The trial court construed the agreement against its drafter, Tri–State, and concluded that because all permits necessary for the operation of *an* asphalt plant were received by February of 1987, Tri–State was in default for failing to pay rent beginning in March of 1987. Having considered the arguments of the parties in light of the relevant case law, we conclude that the trial court has correctly discussed and decided this issue in its opinion of April 6, 1990.

■ The second prong of Tri–State's argument on this issue is the claim that its exercise of an option to buy the property terminated its obligation to pay rent. The option to buy is set forth in Article 20 of the lease agreement, which reads as follows:

> Lessor hereby grants to Lessee the right and option to purchase the real property described in Appendix A and the appurtenances and fixtures attached thereto and all rights of way ..., on or after January 1, 1987, for Seventy Five Thousand Dollars ($75,000.00), on the condition that Lessee shall give one (1) month notice in writing of its intention to exercise this option to Lessor; that this Lease shall not have been previously terminated; and that Lessee has observed and complied with the terms and conditions of this Lease required of Lessee up to the time of the exercise of that option and the payment of the purchase price therefore in the manner provided. Lessor

shall convey the demised premises by General Warranty Deed.... The Deed shall be accompanied by an abstract of title showing a good and unencumbered title passing under and by the resulting conveyance. On the delivery of the above described Deed and abstract of title this Lease shall become void.

The sale price of $75,000.00 is based on the demised premises containing approximately three (3) acres, more or less. A variance of 10% shall apply to the acreage. The price is determined to be $25,000.00 per acre.

Lease Agreement, Article 20. Tri–State asserts that in a letter dated July 27, 1987, it informed Darrt of its intention to exercise its option to purchase the property and that Darrt responded with a letter dated August 3, 1987, in which it acknowledged the exercise of the option. When it exercised the option to purchase, Tri–State argues, the landlord-tenant relationship terminated, and with it the obligation to pay rent.

 Our case law holds that when a lessee of real property exercises an option to purchase that is contained in the lease, the parties' relationship as landlord and tenant ceases to exist and the lease is converted into a contract of sale. *Philadelphia Housing Authority v. Barbour*, 405 Pa.Super. 140, 146, 592 A.2d 47, 50 (1991) [citing *Detwiler v. Capone*, 357 Pa. 495, 55 A.2d 380 (1947)]. We conclude, however, that no such conversion occurred in the present case. Although Tri–State now relies upon the principle of law just cited, Article 20 of the parties' agreement states that the lease shall become void upon delivery of the deed and abstract of title. Where the words of a contract are clear and unambiguous, as in the present case, the intent of the parties is to be found in the express language of the contract. *Marcinak v. Southeastern Greene School District*, 375 Pa.Super. 486, 492, 544 A.2d 1025, 1027 (1988). By their choice of language, therefore, the parties have agreed that the lease shall not terminate upon Tri–State's exercise of the option to buy, but shall instead continue in

effect until Darrt delivers the deed and abstract of title to Tri–State.[1]

Moreover, Article 20 states that the lessee has the right and option to purchase the property on the condition that "Lessee has observed and complied with the terms and conditions of this Lease required of Lessee up to the time of the exercise of that option...." We have already held that Tri–State, at the time it allegedly exercised the option to buy, was in default, having failed to meet its obligation to pay rent beginning on March 1, 1987. Accordingly, as Tri–State did not meet all of the conditions specified in Article 20 for a valid exercise of the option to purchase, Tri–State's argument is without merit.

In its second issue, Tri–State contends that the trial court erred in denying the request, made by Tri–State in its counterclaim, that Darrt reimburse Tri–State for costs and expenses allegedly incurred as a result of Darrt's failure to grant to Tri–State a right of way to obtain access to electrical power. Article 21 of the lease provides as follows:

Lessor hereby grants to Lessee a right of way or rights of way over and across the remaining property owned and/or leased by Lessor for the purpose of installing and maintaining utility lines and/or service necessary for this property if Lessee so desires. The location of said rights of way shall be mutually agreed upon by the Lessor and Lessee.

Tri–State contends that the parties reached an agreement concerning the right of way but that Darrt, in violation of the lease agreement, then attempted to set a price on Tri–State's use of the right of way.

Our review of the evidence of record does not indicate that Darrt "intentionally denied [Tri–State] access to pow-

1. Although the trial court did not address this provision of the lease, we may affirm the decision of the trial court if it is correct for any reason. *Daniel Adams Associates v. Rimbach Publishing, Inc.,* 360 Pa.Super. 72, 85 n. 3, 519 A.2d 997, 1003 n. 3 (1987), *alloc. denied,* 517 Pa. 597, 599, 535 A.2d 1056, 1057 (1987).

er" (Brief for Appellant at 16–17), but rather that the parties were unable to reach a complete agreement on the matter. The record indicates that Darrt was willing to grant Tri–State an easement and right of way for a nominal consideration but, since Tri–State would be tapping into the substation on Darrt's property, that Darrt also sought a monthly payment in return for Tri–State's use of the electrical meters and equipment; the parties could not agree on the amount of such payment. We conclude, therefore, that the trial court properly found for Darrt and against Tri–State on the latter's counterclaim.

Tri–State's next issue concerns the following aspect of the trial court's decision:

> Regarding the claim for survey fees, the court finds [that Darrt] had orally agreed to provide [Tri–State] with a survey and legal description of the subject premises. Since [Tri–State] had expended monies to obtain said description for the benefit of both parties, the court finds [Darrt] liable to [Tri–State] for one-half of said fee. See plaintiff's [Darrt's] Exhibit 15.

Trial Court Opinion at 8. The survey fee was $4,707.50; the amount awarded to Tri–State, therefore, was $2,353.75. Plaintiff's Exhibit 15 is a letter dated August 3, 1987, from Darrt to Tri–State, which reads in pertinent part as follows:

> As to the reimbursement of costs incurred to obtain a survey and legal description, [Darrt] feels this information is incorrect. In preliminary discussions with Tri–State ..., it was stated that a survey and legal description was too costly for [Darrt] and if Tri–State wished to obtain one it would be at their own expense.
>
> Since you have taken the option to buy, [Darrt] will agree to pay one-half (½) of the survey charges, $2,353.75, as it will be beneficial to both parties.

The trial court's ruling is in accord with Plaintiff's Exhibit 15, and Tri–State does not refer us to any evidence showing that in fact Darrt agreed to pay the entire cost of the

survey. Accordingly, this claim does not entitle Tri–State to relief.[2]

■ In its final issue, Tri–State contends that the trial court abused its discretion in granting the "harsh remedy" (Brief for Appellant at 20) of ejectment. Article 11 of the lease agreement provides in pertinent part as follows:

> Lessee agrees that if the rent reserved by this Lease, or any part, therof [sic], shall be unpaid when due, or Lessee shall fail to perform any of the covenants, conditions, provisions and agreements herein contained, ... Lessor may recover and resume possession of the leased premises by force or otherwise, without being liable for prosecution therefor.

Having reviewed the evidence pertaining to this issue, we agree with the trial court that "the plant at issue is not so 'fixed' that removal of it would be unwarranted" (Trial Court Opinion at 8). Accordingly, Tri–State's claim that such a remedy is inequitable is without merit.

Order affirmed.

---

2. Tri–State also argues that "to be consistent, the [trial] court, in finding that survey charges were owed, should logically have found that the option agreement was exercised" (Brief for Appellant at 19). In light of our resolution of Tri–State's first issue, we are not required to determine whether the parties' course of conduct, but for Tri–State's default, would have evidenced a valid exercise of the option to buy.

In its argument on this issue, Darrt asserts that "the [trial] Court erred when it determined that [Darrt] was responsible for one-half of the survey fees and this honorable Court should respectfully reverse the [trial] Court's finding and remand this issue ... for a determination consistent with [Darrt's] argument" (Brief for Appellee at 18). Because Darrt has not filed a cross-appeal, this issue is not properly before us. *Arcidiacono v. Timeless Towns of the Americas, Inc.*, 363 Pa.Super. 528, 531 n. 2, 526 A.2d 804, 806 n. 2 (1987).