Robert C. **EMERSON** and Ronald Emerson, Co–Executors of the Estate of Kenneth H. Emerson, Deceased, and as Individuals, **Plaintiffs,**

v.

**ADULT COMMUNITY TOTAL SERVICES, INC.** and Total Care Services, Inc. and Genesis Health Ventures, Inc., **Defendants.**

**Civ. A. No. 92–6113.**

United States District Court,
E.D. Pennsylvania.

Jan. 6, 1994.

Benjamin Kuby, Klovsky, Kuby & Harris, Philadelphia, PA, for plaintiffs.

James F. Wiley and Alexis L. Barbieri, Tutoki & Wiley, Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is the motion of defendants, Adult Community Total Services, Inc. ("ACTS"), Total Care Services, Inc. and Genesis Health Ventures, Inc., for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants are the owners and/or operators of Spring House Estates, an adult retirement community located in Spring House, Pennsylvania. On February 22, 1990, Kenneth Emerson entered into a resident agreement with ACTS, whereby defendants agreed to provide living accommodations, meals and other services throughout Mr. Emerson's lifetime upon payment of an $83,000 entrance fee along with monthly dues. After paying these fees, Mr. Emerson resided at Spring House Estates for approximately five and a half months until he suffered a stroke while in his apartment. He was found by defendants' staff two days later, and subsequently died approximately two weeks later while in the hospital.

Thereafter, plaintiffs filed a three-count complaint against defendants seeking damages under the wrongful death act, 42 Pa. C.S.A. § 8301 and the survival act, 42 Pa. C.S.A. § 8302. Both Counts One and Two of the complaint sound in negligence and allege that defendants had "a duty to provide an effective and dependable system of security and monitoring to Emerson and the other residents for their own physical protection and for the benefit of their continued health, including, but not limited to, duties to maintain an effective passive monitoring system and a medical response system." Complaint, para. 11. Plaintiffs essentially claim that if there had been such a system at Spring House Estates, Mr. Emerson would have been found immediately after his stroke and possibly would not have died as a result. Plaintiffs' third count seeks rescission of the resident agreement between Kenneth Emerson and defendants along with a refund of the $83,000 entrance fee paid by Kenneth Emerson. Plaintiffs base this count on claims of both misrepresentation and unjust enrichment.

Defendants now seek summary judgment claiming they cannot be held liable in negligence because they had no duty to provide any type of monitoring system. They also claim that there is no evidence of any misrepresentations or unjust enrichment with respect to the resident agreement and therefore plaintiffs are not entitled to rescission. For the reasons explained more fully below, we agree with defendants and will grant summary judgment on their behalf.

### Standard

In considering a motion for summary judgment, the court must consider whether the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact, and whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The court is required to determine whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making this determination, all reasonable inferences must be drawn in favor of the nonmoving party. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2512. While the movant bears the initial burden of demonstrating an absence of genuine issues of material fact, the nonmovant must then establish the existence of each element of its case. *J.F. Feeser, Inc., v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3rd Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

*Discussion*

## A. Negligence

■ We first address whether or not defendants owed a duty to Mr. Emerson so as to raise an issue of material fact with respect to defendants' liability in negligence under the wrongful death act and the survival act. Initially, we note that the determination of whether a duty exists is a question of law to be decided by the court. *Burton v. Terry*, 140 Pa.Cmwlth. 336, 592 A.2d 1380, 1383 (1991). "[I]n the context of a negligence action, it is fundamental that the plaintiffs establish the duty owed by [defendants], the breach of which might give rise to injuries alleged to be suffered by the plaintiffs." *Otto v. American Mutual Ins. Co.*, 241 Pa.Super. 423, 429, 361 A.2d 815, 818–19 (1976), *vacated on other grounds*, 428 Pa. 202, 393 A.2d 450 (1978). If the law does not impose a duty on defendants to act under a certain set of circumstances, a claim for negligence will not survive. *Wright v. Federal Machine Co., Inc.*, 535 F.Supp. 645, 650 (E.D.Pa.1982); *Otto*, 241 Pa.Super. at 429, 361 A.2d at 819.

■ Duties can arise from common law, by statute and by contract. *Walker v. Pennsylvania Co. For Insurances on Lives and Granting Annuities*, 263 Pa. 480, 485, 106 A. 795, 796 (1919). It appears that defendants have no duty to provide monitoring systems either in common law or by statute, therefore, defendants' duty to provide such systems can only arise by contract. It is well settled that in construing terms of a contract, the contractual provisions should be looked at as a whole in order to determine the intent of the parties. *Marshall v. Port Auth.*, 524 Pa. 1, 568 A.2d 931, 936 (1990). "Where the words of a contract are clear and unambiguous . . . the intent of the parties is to be found in the express language of the contract." *Darrt Dev. Co. v. Tri–State Asphalt Corp.*, 415 Pa.Super. 239, 609 A.2d 171, 173 (1992). *See also Amoco Oil Co. v. Snyder*, 505 Pa. 214, 478 A.2d 795, 798 (1984) (courts focus on the terms of the contract as they are expressed, rather than what may have been silently intended). Likewise, words in a contract are to be given their ordinary, intended meaning. *Amoco*, 505 Pa. 214, 478 A.2d 795, 798 (1984).

■ Plaintiffs claim that section 8(M) of the resident agreement between Mr. Emerson and defendants is the basis of the duty to provide monitoring systems. Section 8(M) of the resident agreement states "A trained security team shall be provided daily by Estates at the retirement community." Plaintiffs claim that the relationship between Mr. Emerson and defendants was one in which such a duty was required. They further contend that this duty also arises by virtue of another provision of the agreement which provides residents with access to medical attention twenty-four hours a day in case of an emergency if residents call either the security office or the resident nurse's office. Section 8(L) of the agreement.

After careful review of the entire agreement, we hold there is no contractual duty by defendants to provide any sort of monitoring system for the security and health of residents at Spring House Estates. First, neither of the provisions cited by plaintiffs contemplates any duty by defendants to provide this type of system. While section 8(M) provides for a "trained security team," it is likely that the parties intended this to mean that there would be a staff of security guards located in the resident community. The words "security team" imply that people were there to look out for the residents' safety. What "security team" does not imply, as plaintiffs contend, is that there would be some sort of system established to monitor residents' health twenty-four hours a day. If this was what the parties intended, then they should have specifically stated that. Further, even though defendants agreed to provide access to medical treatment twenty-four hours a day, the resident had the obligation to call either the nurse's office or the security guard's office to obtain that service.

Moreover, the resident agreement as a whole further demonstrates there was no duty on defendants because under the agreement, the parties simply had a landlord/tenant relationship whereby defendants provided Mr. Emerson with a place to live in exchange for consideration. While the difference between a regular landlord/tenant

situation and this one is that other services such as meals and access to medical treatment were provided by defendants here, that still does not impose a duty on defendants to provide a monitoring system for the residents.

The agreement states:

Although Estates provides Nursing Facilities for its Residents, it is not intended that its function is that of a nursing home. It is a community of people who have chosen to enjoy their retirement years in a wholesome atmosphere, in a spirit of dignity, and with freedom from the many burdensome responsibilities of life.

Section 11B(1) of the agreement. Further, under the agreement Mr. Emerson had the choice to be admitted into other living spaces within the community such as a personal care unit where a nurse was on duty in the personal care wing twenty-four hours a day. Instead, he chose to live in a one bedroom apartment in the community that did not have such services.

Looking at the agreement as a whole, there cannot be a duty to monitor residents because the agreement clearly indicates that this was not the intent of the parties. Simply because Mr. Emerson and other residents were elderly and possibly their health was deteriorating is not a reason to impose a duty, especially when the agreement clearly states that the intent of Spring House Estates was not to be a nursing home. Had Mr. Emerson wanted special monitoring because of his health, then he could have contracted for it. However, absent any language or intent of such a duty in the agreement, plaintiffs' claims of negligence under the wrongful death act and the survival act must fail as a matter of law.[1]

## B. Contract

Plaintiffs' arguments in support of their claim for rescission of the resident agreement are also without merit. Plaintiffs first claim that defendants misrepresented the level of security that Mr. Emerson could expect to benefit under the agreement and therefore the agreement should be set aside as unconscionable, especially because there was no provision in the agreement providing for a refund of the entrance fee when residents die less than six months after entering the community. Plaintiffs also claim that retaining the entrance fee amounts to unjust enrichment by defendants.

In order for a contract to be found unconscionable, plaintiffs must show that there was an absence of meaningful choice by Mr. Emerson when he entered into the contract, and they must show which contract terms unreasonably favor defendants. *Wagner v. Estate of Rummel*, 391 Pa.Super. 555, 571 A.2d 1055, 1059 (1990), *allocatur denied*, 527 Pa. 588, 588 A.2d 510 (1991); *Koval v. Liberty Mutual Ins. Co.*, 366 Pa.Super. 415, 531 A.2d 487, 491 (1987), *allocatur denied*, 518 Pa. 619, 541 A.2d 746 (1988). However, a mere disparity in bargaining power is not enough to justify setting aside a contract as unconscionable. *Koval*, 531 A.2d at 491. Moreover, "[c]ontracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains." *Simeone v. Simeone*, 525 Pa. 392, 581 A.2d 162, 165 (1990) (citations omitted).

Based on these rules, we hold that plaintiffs are not entitled to rescind the agreement based on unconscionability. While the agreement does not provide for a refund of the entrance fee under this factual scenario, there is a provision that provides for a refund if the resident dies within a 120–day probationary period after first entering the community. Section 14(c) of the agreement. That section clearly states that no entrance fees will be refunded after the 120–

---

1. Although plaintiffs also claim that a duty arises by virtue of sections 314A and 323 of the Restatement of Torts, Second, these claims also fail. Section 314A pertains to the duty owed by common carriers, and has no applicability to defendants. Moreover, section 323, which applies liability when someone's actions increase the risk of harm, cannot "be invoked to create a duty where one does not exist." *Morena v. South Hills Health Sys.*, 501 Pa. 634, 462 A.2d 680, 684 (1983); *Otto*, 241 Pa.Super. 423, 429, 361 A.2d 815, 819 (1976), *vacated on other grounds*, 482 Pa. 202, 393 A.2d 450 (1978).

day probationary period if death should occur, and the entrance fee shall become the exclusive property of Estates. *Id.*

Mr. Emerson entered into this agreement when he was 83 years old. While it is conceivable that he could have lived for possibly twenty more years, there was no guarantee that he would do so, and it is just as likely that he might have died the day after he entered the community. Plaintiffs have presented no evidence of any type of misrepresentations about the level of security by defendants. Nor is there anything in the contract to indicate that it is unconscionable, or that there was a lack of meaningful choice by Mr. Emerson. There is no evidence that Mr. Emerson was not fully aware of what he was doing when he entered into the agreement, and simply because he was not able to enjoy many years at Spring House Estates is no reason to render the contract void.

 Additionally, this is also not a case warranting recovery by plaintiffs for unjust enrichment. In order to recover under the doctrine of unjust enrichment, it must be shown that the defendants passively received or wrongfully secured a benefit from Mr. Emerson that would be unconscionable for them to retain. *Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828 F.2d 989, 999 (3rd Cir.1987); *Salvino Steel v. Fletcher & Sons,* 398 Pa.Super. 86, 580 A.2d 853, 857 (1990). When the parties' relationship is governed by a written agreement or contract, however, then the doctrine of unjust enrichment is inapplicable. *Hershey Foods,* 828 F.2d at 999.

 In this case, there is an express agreement and therefore the doctrine of unjust enrichment is inapplicable. Even if the doctrine was applicable, there is no unjust enrichment because both sides received a benefit in this case. Mr. Emerson received living accommodations and services and defendants received money. The agreement clearly indicated there would be no refund if death occurred after 120 days, therefore, we are not inclined to grant plaintiffs equitable relief in light of the agreement without any evidence showing how defendants wrongfully obtained a benefit, if any, from Mr. Emerson. Moreover, plaintiffs' argument that defendants should not profit from their negligence is moot as we have already found there is no negligence in this case because defendants had no duty. As such, there is no genuine issue of material fact with respect to plaintiffs' claim for rescission of the resident agreement and a refund of the entrance fee based on unjust enrichment and misrepresentation.

### Conclusion

In sum, summary judgment is warranted in this case on all three counts of the complaint. Plaintiffs' claims of negligence under the wrongful death act and the survival act must fail because there is no duty by defendants to provide any sort of monitoring system for the safety of residents. Plaintiffs' claim under the survival act for rescission of the resident agreement and a refund of the entrance fee based on misrepresentation and unjust enrichment also fails because there is no evidence that the agreement was not fairly entered into, because both parties received a benefit under the agreement and because the doctrine of unjust enrichment does not apply where there is a written agreement between the parties. An appropriate order follows.

### ORDER

AND NOW, this 6th day of January, 1994, upon consideration of the motion of defendants Adult Community Total Services, Inc., Total Care Services, Inc., and Genesis Health Ventures, Inc., for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and plaintiffs' response thereto, it is hereby ORDERED that defendants' motion is GRANTED, and summary judgment is entered in favor of defendants and against plaintiffs on all counts of the complaint.